1  **SEYFARTH SHAW LLP**
   Kenwood C. Youmans (SBN 68258)
2  kyoumans@seyfarth.com
   David D. Kadue (SBN 113578)
3  dkadue@seyfarth.com
   Nicole A. Keshishian (SBN 245642)
4  nkeshishian@seyfarth.com
   2029 Century Park East, Suite 3300
5  Los Angeles, California 90067-3063
   Telephone: (310) 277-7200
6  Facsimile: (310) 201-5219

7  Attorneys for Defendant
   COSTCO WHOLESALE CORPORATION

8

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11  SUZANNE JUSTICE, as an individual      ) CASE NO. LACV11-6563-ODW
    and on behalf of all similarly situated ) (JEMx)
12  employees,                              )
                                            ) **DEFENDANT'S MOTION TO**
13              Plaintiffs,                 ) **DISMISS PLAINTIFF'S CLASS**
                                            ) **ACTION COMPLAINT OR, IN**
14         v.                               ) **THE ALTERNATIVE, TO**
                                            ) **STRIKE THE CLASS ACTION**
15  COSTCO WHOLESALE                        ) **ALLEGATIONS:**
    CORPORATION and DOES 1 through          )
16  50, inclusive,                          ) **(1)  NOTICE OF MOTION AND**
                                            )      **MOTION**
17              Defendants.                 )
                                            ) **(2)  REQUEST FOR JUDICIAL**
18                                          )      **NOTICE** [Filed Under
                                            )      Separate Cover]
19                                          )
                                            ) **(3)  MEMORANDUM OF**
20                                          )      **POINTS AND**
                                            )      **AUTHORITIES**
21                                          )
                                            ) **(4)  PROPOSED ORDER** [Filed
22                                          )      Under Separate Cover]
                                            )
23                                          ) **Date:    September 26, 2011**
                                            ) **Time:    1:30 p.m.**
24                                          ) **Ctrm.:   11**
                                            ) **Judge:   Hon. Otis D. Wright II**
25                                          )
                                            )
26                                          )
                                            )
27  _____)
28

---

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION....................................................................1

REQUEST FOR JUDICIAL NOTICE.................... **Error! Bookmark not defined.**

MEMORANDUM OF POINTS AND AUTHORITIES............................................1

I.      Applicable Legal Standards .......................................................................4

II.     Plaintiff Has Failed to Plead a Cognizable Theory of Recovery
        Because PAGA is Unconstitutional on Separation of Powers Grounds.........4

        A.      PAGA violates the separation of powers doctrine by
                empowering profit-seeking private attorneys to prosecute public
                claims, impairing the judiciary's role in regulating attorney
                conduct. ........................................................................................5

                1.      The judiciary has the inherent authority to regulate
                        attorneys and the practice of law. ..............................................5

                2.      The Legislature may not permissibly enact a statute that
                        materially impairs the judiciary's inherent power over
                        attorney conduct...........................................................................6

                3.      California private attorneys who represent public claims
                        must be neutral and subject to government oversight. ...............8

        B.      PAGA usurps the judiciary's power to ensure the neutrality of
                private counsel who prosecute public actions because it
                authorizes such representation without government oversight...........11

                1.      PAGA actions, being brought on behalf of the State, are
                        thus subject to the Supreme Court's rule of neutrality.............11

                2.      PAGA is unconstitutional because it lacks the safeguards
                        necessary to ensure the neutrality of private counsel. ..............12

        C.      PAGA's constitutional defect cannot be cured through
                severability. ........................................................................................14

III.    Plaintiff has not stated a claim for relief because she fails to plead
        facts to plausibly establish that Costco failed to "provide" a seat. ..........14

IV.     The Court Should Dismiss or Strike the Class Action Allegations
        Because Plaintiff Has Not Pleaded—And Cannot Plead—Facts to
        Support The Class Allegations. ................................................................17

        A.      Plaintiff has failed to plead facts to plausibly support that an
                ascertainable class exists—and cannot do so as a matter of
                law.......................................................................................................19

i

B.    Plaintiff has failed to plead facts to plausibly show her claims are typical of putative class members'—and cannot do so. ................................................................... 20

V.    The Court Should Dismiss The Claims Regarding Overtime, Meal and Rest Breaks, and Labor Code §203 Because Plaintiff Has Not Pleaded Facts To Support Those Claims. .................................................. 22

VI.   The Court Should Dismiss Plaintiff's Claims, with Prejudice, Because Any Award of Penalties Would Be Unjust, Arbitrary, Oppressive, And Confiscatory as a Matter of Law. ................................. 22

A.    The penalty provisions in Section 2699 must be applied narrowly. ................................................................. 22

B.    The Court Has Discretion To Impose Penalties Less Than The Amounts Specified In The Statute Or No Penalties At All. ............... 23

ii

13593809v.2

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009) ........................................................17, 18, 21

*Balistreri v. Pacifica Police Department,*
901 F.2d 696 (9th Cir. 1990)........................................................ 4

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ........................................................17, 18, 21

*Bostick v. St. Jude Med., Inc.,*
2004 U.S. Dist. LEXIS 29997 (W.D. Term. Aug. 17, 2004)........................... 19

*Brown v. Federal Express Corp.,*
249 F.R.D. 580 (C.D. Cal. 2008) ........................................................ 15, 16

*Currie-White v. Blockbuster, Inc. Currie-White v. Blockbuster, Inc.*
2009 WL 2413451 (N.D. Cal. 2009)........................................................ 5

*E. Texas Motor Freight Sys. v. Rodriguez,*
431 U.S. 395, 97 S. Ct. 1891, 52 L. Ed. 2d 453 ........................................ 20

*Eversole v. EMC Mortg. Corp.,*
2007 U.S. Dist. LEXIS 38892 (E.D. Ky. May 29, 2007) ............................. 19

*Fantasy, Inc. v. Fogerty,*
984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds, Fogerty v.
Fantasy, Inc.,* 510 U.S. 517 (1994) ........................................................ 4

*Gabriella v. Wells Fargo Financial, Inc.,*
No. C 06-4347 SI, 2008 U.S. Dist. LEXIS 63118 (N.D. Cal. 2008) ................. 15

*Gilbert v. Eli Lilly & Co.,*
56 F.R.D. 116 (D.P.R. 1972) ........................................................ 4

*Hanni v. Am. Airlines, Inc.,*
2010 U.S. Dist. LEXIS 3410 (N.D. Cal. Jan. 15, 2010) ............................. 19

*Hodczak v. Latrobe Specialty Steel Co.,*
2009 WL 911311 (W.D. Pa. Mar. 31, 2009)........................................... 18

*Kenny v. Supercuts, Inc.,*
252 F.R.D. 641 (N.D. Cal. 2008) ........................................................ 16

*Kimoto v. McDonald's Corps.,*
No. CV 06-3032 PSG (FM0x), 2008 U.S. Dist. LEXIS 86203, *1647
(C.D. Cal. 2008) ........................................................ 15

iii

*Kohler v. Hyatt Corp.*,
No. EDCV 07-782-VAP (CWx), 2008 U.S. Dist. LEXIS 63392, *17-20
(C.D. Cal. 2008) ............................................................................... 16

*Lanzarone v. Guardsmark Holdings, Inc.*,
No. CV06-1136 R (PLAx), 2006 U.S. Dist. LEXIS 95785, *1849 (C.D.
Cal. 2006) ........................................................................................ 16

*Lopez v. G.A.T. Airline Ground Support, Inc.*,
2010 U.S. Dist. LEXIS 95636 (S.D. Cal. 2010) ................................. 15

*Nicholas v. CMRE Financial Services, Inc.*,
2009 WL 1652275 (D.N.J. June 11, 2009) ........................................ 18

*O'Connor v. Boeing N. Am., Inc.*,
184 F.R.D. 311 (C.D. Cal. 1998) ...................................................... 19

*Perez v. Safety-Kleen Sys., Inc.*,
253 F.R.D. 508 (N.D. Cal. 2008) ...................................................... 16

*Robinson v. Sheriff of Cook County*,
167 F.3d 1155 (7th Cir. 1999) .......................................................... 20

*Salazar v. Avis Budget Group. Inc.*,
251 F.R.D. 529 (S.D. Cal. 2008) ...................................................... 16

*Sidney-Vinstein v. A.H. Robins Co.*,
697 F.2d 880 (9th Cir. 1983) .............................................................. 4

*Washington v. Joe's Crab Shack*,
271 F.R.D. 629 (N.D. Cal. 2010) ...................................................... 15

*White v. Starbucks Corp.*,
497 F. Supp. 2d 1080 (N.D. Cal. 2007) ............................................ 16

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*,
135 F.3d 658 (9th Cir. 1998) ............................................................ 15

**STATE CASES**

*Arias v. Superior Court*,
46 Cal. 4th 969 (2009) ...................................................................... 11

*Brinker Restaurant Corp. v. Superior Court*,
196 P.3d 216, 85 Cal. Rptr. 3d 688 (2008) ...................................... 15

*Brinkley (Fred) v. Public Storage*,
198 P.3d 1087, 87 Cal. Rptr. 3d 674 (2009) .................................... 15

*Clancy*,
39 Cal. 3d 740 .......................................................... 8, 9, 10, 11, 12, 13

*County of Santa Clara v. Superior Court*,
50 Cal. 4th 35 ........................................................... 8, 10, 11, 12, 13

iv

*Hale v. Morgan*,
   22 Cal. 3d 388 (1978) .......................................................................... 22

*Hustedt v. Workers' Comp. Appeals Bd.*,
   30 Cal. 3d 329 (1981) ............................................................................ 5

*In re Application of Lavine*,
   2 Cal. 2d 324 (1935) ........................................................................... 6, 7

*Manning v. Municipal Court*,
   132 Cal. App. 3d 825 (1982) ................................................................ 14

*Merco Constr. Engineers, Inc. v. Municipal Court*,
   21 Cal. 3d 724 (1984) ......................................................................... 6, 7

*No Oil, Inc. v. Occidental Petroleum Corp.*,
   50 Cal. App. 3d 8 (1975) ...................................................................... 22

*O'Brien v. Jones*,
   23 Cal. 4th 40 (2000) .......................................................................... 7, 8

*People v. Superior Court*,
   54 Cal. App. 4th 407 (1997) .................................................................. 4

*Santa Clara County Counsel Attorneys Association v. Woodside*,
   7 Cal. 4th 525 (1994) .......................................................................... 6, 8

*Schuhart v. Pinguelo*,
   230 Cal. App. 3d 1599 (1991) .............................................................. 22

*Superior Court v. County of Mendocino*,
   13 Cal. 4th 45 (1996) ...................................................................... 5, 6, 7

*Waterman Convalescent Hospital, Inc. v. Jurupa Community Services Dist.*,
   53 Cal. App. 4th 1550 (1997) .............................................................. 22

**STATE STATUTES**

Cal. Lab. Code § 203 ......................................................................... 3, 21

Cal. Lab. Code § 512(a) ......................................................................... 15

Cal. Lab. Code § 2698 et seq. ............................................................ 3, 11

Cal. Lab. Code § 2699(i) ....................................................................... 11

Cal. Lab. Code § 2699.3 ........................................................................ 12

Cal. Lab. Code § 2699(e)(2) .................................................................. 23

Cal. Lab. Code § 2699(l) ....................................................................... 13

Wage Order 7-2001 ............................................................................... 15

v

13593809v.2

Wage Order 7-2001, § 14 ..................................................................................14

**RULES**

Fed. R. Civ. P. 8(a) .........................................................................................18

Fed. R. Civ. P. 8(a)(2) .....................................................................................17

Fed. R. Civ. P. 12(b)(6) .....................................................................................4

Fed. R. Civ. P. 12(f).............................................................................................4

**REGULATIONS**

Cal. Code Regs., Title 8 § 11070.......................................................................14

**CONSTITUTIONAL PROVISIONS**

Cal. Const. of 1849, Article III, § 1 ...................................................................6

Cal. Const., Article III, § 3 ................................................................................6

Cal. Const., Article VI, § 1 ................................................................................5

California Constitution .......................................................................................5

Article VI of the California Constitution............................................................5

**OTHER AUTHORITIES**

5 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE § 23.21[1] (2001) ...................19

5 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE § 23.21[3][c] (2001) ..............19

Class Action Fairness Act of 2005 ......................................................................3

vi

13593809v.2

# NOTICE OF MOTION AND MOTION

**TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on September 26, 2011, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 11 of the above-captioned Court, located at 312 N. Spring Street, Los Angeles, California, Defendant, Costco Wholesale Corporation, will and hereby does move to dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure in its entirety, with prejudice, on the grounds that it fails to state a claim upon which relief can be granted.

In the alternative, Defendant will and hereby does move, pursuant to Fed. R. Civ. P. 12(f), for an order striking the class action allegations of the Complaint, with prejudice.  Specifically, Defendant moves to strike portions of the Complaint as set forth below:

1.  Page 2, ¶ 1, lines 5-7:  "This is a class action and a representative action for recovery of penalties under the California Labor Code Private Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code section 2698 et seq.";

2.  Page 2, ¶ 1, line 10:  "and other current and former employees";

3.  Page 2, ¶ 1, line 11:  "and other current and former employees of Defendants";

4.  Page 2, ¶ 4, line 21:  "to the Plaintiff Class members;"

5.  Page 3, ¶ 3, line 20:  "during the Class Period;"

6.  Page 3, ¶ 4, lines 24-25:  "Plaintiff' Class during the Class Period;"

7.  Page 3, ¶ 4, line 25-26:  "and similarly situated person;

8.  Page 3, ¶ 4, line 26:  "and Plaintiff Class;"

9.  Page 4, ¶ 5, line 3:  "its Cashiers, including;"

10. Page 4, ¶ 6, line 9:  "to the Plaintiff Class members;"

1

13593809v.2

11.    Page 4, ¶ 8 in its entirety;

12.    Page 4, ¶ 9 in its entirety;

13.    Page 4, ¶ 10 in its entirety;

14.    Pages 4-6, ¶ 11 in its entirety;

15.    Page 6, ¶ 12, line 10:  "and Plaintiff Class;"

16.    Page 6, ¶ 13, line 14:  "and other Class members;" and

17.    Page 7, Prayer, line 2:  "the Plaintiff Class."

This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the attached Request for Judicial Notice and all exhibits thereto, the Court's file and records in this action, all matters which may be judicially noticed pursuant to Rule 201 of the Federal Rules of Evidence, and such other evidence and arguments as may be made or presented at or before the hearing on this Motion.

This Motion follows conferences of counsel pursuant to Central District Local Rule 7-3, which took place between June 22 and August 10, 2011.  The parties were unable to reach a resolution eliminating the need for a hearing.

DATED: August 17, 2011            SEYFARTH SHAW LLP


By: _____/s/ David D. Kadue_____
            David D. Kadue
            Nicole A. Keshishian

Attorneys for Defendant
COSTCO WHOLESALE CORPORATION

2

13593809v.2

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION AND SUMMARY OF ARGUMENT

This kind of lawsuit is the "flavor of the month" for California's wage and hour litigation industry.  Relying on a seldom-cited provision in the California Industrial Welfare Commission Wage Order, Plaintiff, a former Cashier Assistant at a Costco warehouse, alleges that Costco violated California law by failing to provide her with seats while she was working.  She seeks millions of dollars in civil penalties pursuant to the California Labor Code Private Attorneys General Act ("PAGA") on behalf of herself, and a putative class of all current and former California-based Costco employees employed as "cashiers" and in "related positions" that regularly involve "the operation of a cash register."

Plaintiff's claims fail for various reasons.  First, she has failed to plead a cognizable legal theory for recovery because PAGA is void as unconstitutional.  No potential amendment can change that fact.  PAGA authorizes private counsel to prosecute Labor Code claims on behalf of the public without any governmental oversight and, thus, without any of the judicial safeguards that the California Supreme Court has deemed necessary to ensure neutrality.  In so doing, PAGA unconstitutionally encroaches upon the judiciary's mandated function to ensure the neutrality of private counsel in public actions.

Second, even if PAGA were constitutional, the Wage Order provision in question requires only that employers "provide" employees with seating when the nature of the work reasonably permits it.  The dictionary—as well as common sense—teaches that "provide" means to make seats available to those employees who wanted them.  Plaintiff has not pleaded that she requested seating, was denied seating, or otherwise that she even wanted seating.  Accordingly, her seating claim fails on its face.

NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO. LACV11-6563-ODW (JEMx)

13593809v.2

1    Third, even if Plaintiff could amend her Complaint to allege that Costco

2  refused to make seats available to her, the class action allegations and the putative

3  class definition would fail as a matter of law.  Based on the nature of Costco's

4  obligation to make seats available as opposed to affirmatively giving them to every

5  person holding a position involving the operation of a cash register, this case is

6  inherently unfit for class treatment.  Any liability determination would necessarily

7  entail individualized inquiries of each person who worked in a cashier or "related

8  position" to ascertain whether she desired a seat, requested a seat, and had a seat

9  denied to her.  While courts should refrain from making class certification

10 determinations at the pleadings stage except in the rarest of cases, this is precisely

11 the type of case suitable for such an early determination.

12    Finally, PAGA vests the Court with substantial discretion to fashion a

13 remedy for alleged violations.  In particular, if, based on the circumstances of the

14 particular case, it would be unjust, arbitrary, oppressive, or confiscatory to impose

15 the maximum civil penalties, a court may choose to impose a lesser amount—or no

16 penalties at all.  Given the nature of the claims and the absence of any allegation of

17 any injury to Plaintiff or the putative class, it would be inherently unjust, arbitrary,

18 oppressive, and confiscatory to impose any penalties whatsoever in this case.

19 Accordingly, to the extent the Court is not otherwise inclined to dismiss the case,

20 Defendant requests that the Court exercise its discretion and dismiss this case

21 because, based on the circumstances herein, any award of penalties would be

22 unjust, arbitrary, and confiscatory.

23            **FACTUAL AND PROCEDURAL BACKGROUND**

24    On May 11, 2011, Plaintiff sent a notice to the California Labor &

25 Workforce Development Agency ("LWDA"), stating that Costco violated various

26 California Labor Code provisions because it purportedly failed to provide meal and

27 rest breaks and failed to account for them on employees' itemized wage statements

28

13593809v.2

1   and in termination pay.  (Request for Judicial Notice ["RFJN"], Ex. A, May 11,

2   2011 Letter to LWDA from Kevin Mahoney).

3         On May 12, 2011, Plaintiff filed a class action complaint in the Los Angeles

4   County Superior Court, seeking penalties pursuant to the California Labor Code

5   Private Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code § 2698 et seq.,

6   on behalf of herself and other current and former employees of Defendant.

7   Complaint, ¶ 1.  She alleges that Costco "failed to provide its cashiers, including

8   Plaintiff, with seats, despite the fact that the nature of cashier work reasonably

9   permits the use of seats."  Complaint, ¶ 5.  Plaintiff further alleges that she is an

10  "aggrieved employee, in that Plaintiff was employed by Costco and was not

11  provided with a seat."  Complaint, ¶ 14.  Plaintiff does not allege that she (or any

12  other putative class member) ever requested a seat, was ever denied a seat, or even

13  that she wanted a seat.  Nor does she allege that she (or any other putative class

14  member) suffered any actual injury or harm from not having a seat.  Plaintiff also

15  alludes to unspecified purported overtime violations, missed meal breaks, missed

16  rest breaks, and violation of Labor Code §203.  Complaint, ¶¶ 4, 6.

17        On May 26, 2011, Plaintiff sent another notice to the LWDA, stating that the

18  May 11 notice "inadvertently failed to include facts regarding violations of the

19  Industrial Welfare Commission Wage Order 7-2001."  But instead of stating

20  "facts," the notice merely regurgitates the relevant Wage Order provisions and

21  states that Costco "failed to comply with the requirements of Wage Order 7-2001,

22  Section 14."  RFJN, Ex. B.  The notice does not allege that Plaintiff ever requested

23  a seat, was ever denied a seat, or even that she wanted a seat.  Nor does the letter

24  she allege any injury suffered from not having a seat.

25        Defendant removed this action to this Court on August 10, 2011 under the

26  Class Action Fairness Act of 2005.  In support of its removal, Defendant averred

27  that it employed over 7,000 people during the relevant time who worked as

28

3

13593809v.2

cashiers and cashier assistants.  See Dkt. Entry 1, ¶ 17.  Defendant calculated the amount in controversy based on the potential civil penalties as exceeding **$35 million**.  See Dkt. Entry 1, ¶¶ 19-21.

## LEGAL ARGUMENT

### I.      Applicable Legal Standards

Under Fed. R. Civ. P. 12(b)(6), a party may move to dismiss for failure to state a claim upon which relief can be granted, and a complaint may be dismissed on this basis for two reasons: (1) lack of a cognizable legal theory; or (2) the absence of sufficient facts alleged under a cognizable legal theory.  *See Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).

Fed. R. Civ. P. 12(f) empowers the Court to "order stricken from any pleading ... any redundant, immaterial, impertinent, or scandalous matter."  Matter is "immaterial" if it has no essential or important relationship to the claim for relief or defenses pleaded.  *See Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).  An "impertinent" allegation is neither responsive nor relevant to the issues involved in the action and which could not be put in issue or given in evidence between the parties.  *Gilbert v. Eli Lilly & Co.*, 56 F.R.D. 116, 120 n.6 (D.P.R. 1972).  Matters may also be stricken by a court to reduce trial complication.  *See Fantasy, Inc.*, 984 F.2d at 1527.  Indeed, the function of a motion to strike is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

### II.     Plaintiff Has Failed to Plead a Cognizable Theory of Recovery Because PAGA is Unconstitutional on Separation of Powers Grounds.

"[U]nless a higher court has upheld the constitutionality of a statute, it is the obligation of the trial and appellate courts to independently measure legislative

4

13593809v.2

enactments against the Constitution and, in appropriate cases, to declare such enactments unconstitutional." *People v. Superior Court*, 54 Cal. App. 4th 407, 411 (1997). No higher court has addressed PAGA's constitutionality in light of the separation of powers doctrine, let alone upheld it against such a constitutional challenge.[1] Thus, this Court should declare PAGA unconstitutional for the reasons stated below.

### A. PAGA violates the separation of powers doctrine by empowering profit-seeking private attorneys to prosecute public claims, impairing the judiciary's role in regulating attorney conduct.

#### 1. The judiciary has the inherent authority to regulate attorneys and the practice of law.

Article VI of the California Constitution vests the judicial power of this state "in the Supreme Court, courts of appeal, superior courts, and municipal courts, all of which are courts of record." Cal. Const., art. VI, § 1. "[T]he power to regulate the practice of law, including the power to admit and to discipline attorneys, has long been recognized to be among the inherent powers of the article VI courts." *Hustedt v. Workers' Comp. Appeals Bd.*, 30 Cal. 3d 329, 336 (1981). According to the California Supreme Court, the courts "have and should maintain vigorously all the inherent and implied powers necessary to properly and effectively function as a separate department in the scheme of our state government." *Superior Court v. County of Mendocino*, 13 Cal. 4th 45, 54 (1996).

---

[1] One case addressing the constitutionality of PAGA is *Currie-White v. Blockbuster, Inc. Currie-White v. Blockbuster, Inc.* 2009 WL 2413451 (N.D. Cal. 2009), which held that "PAGA does not violate the separation of powers principle under the California Constitution *by impermissibly delegating prosecutorial authority to individuals outside the executive branch*." *Id.* at *2. That rejection of an argument that PAGA impermissibly impairs *executive* authority does not apply here, where the separation-of-powers argument is that PAGA impermissibly impairs *judicial* authority.

1

2   **2.    The Legislature may not permissibly enact a statute that materially impairs the judiciary's inherent power over attorney conduct.**

3       The California Constitution expressly provides for the separation of

4   government powers.  Article III states "[t]he powers of State government are

5   legislative, executive, and judicial.  *Persons charged with the exercise of one*

6   *power may not exercise either of the others except as permitted by this*

7   *Constitution*."  Cal. Const. of 1849, art. III, § 1, now art. III, § 3, emphasis added.

8   Although the separation of powers doctrine does not absolutely prohibit one branch

9   from acting with respect to the others, it unquestionably places constitutional limits

10  upon any such actions.  *County of Mendocino,* 13 Cal. 4th at 53.  At issue here is

11  the improper encroachment of the State Legislature into the province of the

12  judiciary.

13      The judiciary and the State Legislature "are in some senses partners in

14  regulation" of attorney-client conduct; the State Legislature has enacted laws that

15  regulate the profession and protect consumers of legal services while the Supreme

16  Court has approved the Rules of Professional Conduct.  *Santa Clara County*

17  *Counsel Attorneys Association v. Woodside*, 7 Cal. 4th 525, 543-44 (1994).

18      But "[w]hen the matter at issue involves minimum standards for engaging in

19  the practice of law, it is [the Supreme Court] and not the State Legislature which is

20  final policy maker." *Merco Constr. Engineers, Inc. v. Municipal Court*, 21 Cal. 3d

21  724, 731 (1984).  Although the State Legislature may put "reasonable restrictions"

22  upon constitutional functions of the courts it may not impose restrictions that

23  "defeat or materially impair the exercise of those functions."  *County of*

24  *Mendocino*, 13 Cal. 4th at 54.  Moreover, the California Supreme Court possesses

25  "the power to provide a *higher* standard of attorney-client conduct than the

26  minimum standards prescribed by the Legislature."  *Woodside*, 7 Cal. 4th at 544;

27  see also *In re Application of Lavine*, 2 Cal. 2d 324, 328 (1935) ("[C]ourts in the

28

6

13593809v.2

1    exercise of their inherent power may demand more than the legislature has

2    required.").

3         When a state legislature crosses the line by significantly interfering with the

4    judicial function, courts do not hesitate to declare the statute unconstitutional.  In

5    *In re Application of Lavine*, 2 Cal. 2d at 328, the California Supreme Court struck

6    down a "pardon statute" that gave an attorney who had been disbarred upon

7    conviction of a crime the right to practice law following an executive pardon of the

8    offense.  Before the enactment of the statute, the grant of a full pardon had been

9    *judicially held* to be insufficient in itself to entitle an attorney to reinstatement,

10   since the attorney's moral and ethical fitness to practice is at issue.  *Id.*  Therefore,

11   the Court found that to the extent the law reinstated such individuals without a

12   showing of moral rehabilitation, it was "unconstitutional and void as a legislative

13   encroachment upon the inherent power of [the Court] to admit attorneys to the

14   practice of law and is tantamount to the vacating of a judicial order by legislative

15   mandate."  *Id.* at 329.

16        Similarly, in *Merco*, the California Supreme Court invalidated as

17   unconstitutional, on separation of powers grounds, a statute that purported to allow

18   corporations to represent themselves—a statue that directly contravened a judicial

19   rule that prohibits a person not licensed to practice law the right to appear in court

20   on behalf of another person.  21 Cal. 3d at 727.  The Court stressed that "legislative

21   enactments are valid only to the extent they do not conflict with rules . . . adopted

22   or approved by the judiciary.  When conflict exists, the legislative enactment must

23   give way."  *Id.* at 728-29.

24        In contrast, those statutes that have survived constitutional challenges on

25   separation of powers grounds have been those where the enactment either

26   facilitated the judicial function or did not preclude the judiciary from exercising its

27   proper role.  For example, in *County of Mendocino*, 13 Cal. 4th 45, the California

28

7

13593809v.2

1    Supreme Court held that the State Legislature's designation of court furlough days

2    does not violate the separation of powers doctrine.  The Court reasoned that the

3    statute did not intrude upon any judge's decision-making process or the

4    independence of the judicial role since it "is unlikely to affect the resolution of a

5    particular controversy or prevent a court from proceeding in accordance with its

6    own view of the governing legal principles."  *Id.* at 65.

7        Similarly, in *O'Brien v. Jones*, 23 Cal. 4th 40, 48 (2000), the California

8    Supreme Court upheld a statute that gave the executive and legislature branches

9    authority to appoint hearing judges to the State Bar Court—a power that had

10   previously rested exclusively within the hands of the Supreme Court.  The Court

11   noted that hearing judges' decisions are subject to review in the Review

12   Department, all of whose judges are appointed by the Court, and that appointees

13   must first be found qualified by an independent entity whose members are

14   appointed by the judiciary.  Given these safeguards, the Court held the new

15   appointment procedure did not "necessarily defeat or materially impair our

16   inherent authority over the practice of law."  *Id.* at 56.

17       Whether a statute that implicates attorney conduct violates separation of

18   powers turns on "whether the statute in question would permit or require an

19   attorney to contravene one of the Rules of Professional Conduct" or some other

20   well-established common law rule.  *Woodside*, 7 Cal. 4th at 544-45.  As explained

21   in the following sections, PAGA is unconstitutional because it authorizes private

22   counsel to represent the public absent procedural safeguards required by the

23   California Supreme Court to ensure their neutrality.

### 3.    California private attorneys who represent public claims must be neutral and subject to government oversight.

24

25       "[I]t is a bedrock principle that a government attorney prosecuting a public

26

27   action on behalf of the government must not be motivated solely by a desire to win

28   a case, but instead owes a duty to the public to ensure that justice will be done."

8

13593809v.2

1    *County of Santa Clara v. Superior Court*, 50 Cal. 4th 35 at 57.  Since then, the

2    California Supreme Court repeatedly has confirmed both the need for neutrality

3    when private attorneys represent public interests in the civil context, and the

4    courts' primary role in ensuring such neutrality.

5          In *Clancy v. Superior Court*, 39 Cal. 3d 740 (1985), the California Supreme

6    Court addressed the propriety of a contingency fee arrangement between a city

7    government and a private attorney whom the City had hired to represent it in

8    certain public nuisance actions.  *Id.* at 743.  Under the arrangement, the private

9    attorney's compensation was directly linked to the outcome of the actions, raising

10   the issue whether it was proper for a private attorney representing the government

11   to have a financial stake in the outcome of the action.  The California Supreme

12   Court held that the contingent fee arrangement was "antithetical to the standard of

13   neutrality that an attorney representing the government must meet when

14   prosecuting a public nuisance abatement action," requiring counsel's

15   disqualification under the court's "general authority to disqualify counsel when

16   necessary in the furtherance of justice."  *Id.* at 750.

17         Explaining its holding, the California Supreme Court stressed the need

18   for attorneys acting on behalf of the public or the government to be neutral,

19   noting that it is "essential to a fair outcome for the litigants in the case in

20   which he is involved" as well as "to the proper functioning of the judicial

21   process as a whole."  *Id.* at 746.  The Court also recognized that "when a

22   government attorney has a personal interest in the litigation, the neutrality so

23   essential to the system is violated."  *Id.*  For this reason, courts can properly

24   disqualify prosecutors and other government attorneys for having such a

25   personal interest in the litigation.  *Id.*

26         The California Supreme Court further explained that since "the rigorous

27   ethical duties imposed on a criminal prosecutor also apply to government lawyers

28

9

13593809v.2

generally," *id.* at 748, the neutrality rules applicable in the criminal context apply with equal force to situations in which private counsel represent the government in certain *civil* actions, such as eminent domain and the public nuisance actions.  In such cases, the attorney must perform a "balancing of interests" between those of the public and those of the defendant, which involves a "delicate weighing of values"—a process which requires neutral decision-making.  *Id.* at 749.  "Any financial arrangement that would tempt the government attorney to tip the scale cannot be tolerated."  *Id.*

In 2010, in *County of Santa Clara*, the California Supreme Court revisited the propriety of contingent-fee arrangements between the government and private counsel in the context of public nuisance actions.  In so doing, it reexamined its opinion in *Clancy*, and concluded that not all public-nuisance prosecutions invoke the same constitutional and institutional interests present in a criminal case.  In those cases that do not involve such interests, "invocation of the strict rules requiring automatic disqualification of criminal prosecutors is unwarranted."  50 Cal. 4th at 52.

Nevertheless, the California Supreme Court concluded that while not all cases are subject to the same stringent conflict-of-interest rules governing the conduct of criminal prosecutors or adjudicators, attorneys prosecuting any public-nuisance abatement actions on behalf of the public are still subject to a "heightened standard of ethical conduct applicable to public officials acting in the name of the public."  *Id.* at 57.  In all such cases where private attorneys represent public interests, the litigation *must* be controlled by "neutral, conflict-free government attorneys [who] retain the power to control and supervise the litigation."  *Id.* at 58. That is because absent governmental "control over critical discretionary decisions involved in the litigation," *id.*, the requisite neutrality is absent and the representation is improper.

10

13593809v.2

1    Accordingly, under *Clancy* and *County of Santa Clara*, private counsel may

2    represent public interests only if there is adequate government oversight to ensure

3    counsel's neutrality.

4        **B.**    **PAGA usurps the judiciary's power to ensure the neutrality of private counsel who prosecute public actions because it authorizes such representation without government oversight.**

5

6    Through PAGA, the State Legislature has authorized private counsel to

7    prosecute Labor Code claims on behalf of the public absent any governmental

8    oversight and, thus, without safeguards the California Supreme Court has deemed

9    necessary to ensure neutrality.  In so doing, the Legislature has encroached upon

10   the judiciary's constitutionally mandated function to ensure the neutrality of

11   private counsel in public actions.  Moreover, unlike the situations in *Clancy* and

12   *County of Santa Clara*, the neutrality problem here is inherent in every PAGA

13   action.

14       **1.**    **PAGA actions, being brought on behalf of the State, are thus subject to the Supreme Court's rule of neutrality.**

15

16   PAGA actions, like public nuisance abatement actions, are prosecuted on

17   behalf of the State.  *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2009).  As the

18   California Supreme Court put it, "an action to recover civil penalties 'is

19   fundamentally a law enforcement action designed to protect the public and not to

20   benefit private parties.'"  *Id.*

21   Before PAGA, only the Labor and Workforce Development Agency

22   ("LWDA") could assess and collect penalties for Labor Code violations.  PAGA

23   changed that rule by allowing employees to assist the government to facilitate the

24   collection of penalties.  The State Legislature was concerned that "adequate

25   financing of labor law enforcement was necessary to achieve maximum

26   compliance with state labor laws, that staffing levels for labor law enforcement

27   agencies had declined and were unlikely to keep pace with the future growth of the

28   labor market."  Lab. Code § 2698 et seq.; *Arias*, 46 Cal. 4th at 980.  It therefore

11

13593809v.2

1    decided that it was in the public interest to allow aggrieved employees, "acting as

2    private attorneys general, to recover civil penalties for Labor Code violations."  *Id.*

3            Consequently, under PAGA, aggrieved employees are deputized to enforce

4    the Labor Code and collect penalties *for the government*.  Although the aggrieved

5    employees have a right to a percentage of such penalties, PAGA requires that *75%*

6    *of the penalties must be paid to the LWDA*.  Lab. Code § 2699(i).

7            Because a PAGA action is one prosecuted on behalf of the public, the same

8    heightened ethical standard enunciated by the California Supreme Court to ensure

9    necessary attorney neutrality necessarily applies to actions prosecuted by private

10   attorneys under PAGA.

### 2.    PAGA is unconstitutional because it lacks the safeguards necessary to ensure the neutrality of private counsel.

12           PAGA by its very terms empowers private attorneys to litigate public actions

13   in a manner that directly violates the applicable ethical standard enunciated by the

14   California Supreme Court in *Clancy* and *County of Santa Clara*.  Neutral,

15   government attorneys do *not* "retain control over critical discretionary decisions,"

16   as required by that standard.  In fact, *they retain no control whatsoever over any*

17   *aspect of PAGA litigation*.  PAGA does not require private litigants to obtain

18   government permission to sue a particular defendant nor does the government have

19   any say in the grounds for the case.

20           Rather, the sole manner in which the government could play any role in

21   controlling a PAGA prosecution is through the pre-dispute notice requirements

22   imposed by Labor Code § 2699.3, but that provision merely requires potential

23   litigants contemplating suing an employer for certain alleged violations under

24   PAGA to inform the government of their intention to do so, and to give the

25   government the first opportunity to investigate the matter.

26           Moreover, although the notice provision requires the government to

27   expressly inform the employee plaintiff whether it intends to investigate the matter,

28                                                 12

13593809v.2

1   *that is the extent of the notice*.  If the government declines to investigate the

2   alleged violations—which is what occurs in the vast majority of cases—that single,

3   pre-litigation, decision amounts to *the only connection* the government will ever

4   have to the lawsuit (other than its potential receipt of any penalties from the

5   action).

6          As for those cases that the government declines to pursue, the private

7   litigants and their attorneys enjoy carte blanche authority to proceed, guided only

8   by their personal needs and interests.  Thus, the government has no say in whether

9   a PAGA claim will even be filed, the facts or theories on which the claim will be

10  based, what discovery will be taken, what motions will be filed, whether the case

11  will be settled, or the terms of the settlement.

12         This is the case because PAGA does not provide for *any means* by which the

13  government could later intervene to ensure neutrality or that the public's interests

14  are being met.  The statute does not provide any means by which the government

15  can monitor the litigation.  Nor does PAGA provide any means by which the

16  government can later step in to oversee negotiations to prevent "shakedown"

17  settlements, except in the limited circumstances of certain health and safety

18  violations, where the Division of Occupational Safety and Health is entitled to

19  "comment" on the proposed settlement, and the court is instructed to give those

20  comments "appropriate weight."  Subject only to some oversight by the trial court

21  of a final settlement agreement (Lab. Code § 2699(l)), the aggrieved employee and

22  his or her counsel alone decide whether to settle PAGA claims and on what terms.

23         In sum, the State Legislature has authorized private attorneys to represent

24  the public in PAGA actions without requiring any governmental control or

25  supervision over the litigation.  By doing so, it has imposed a lesser standard for

26  attorney conduct than the Supreme Court imposed in *Clancy* and *County of Santa*

27  *Clara*.  Consequently, PAGA impermissibly intrudes upon the judiciary's inherent

28

13

13593809v.2

authority over attorney ethical standards and conduct in violation of the doctrine of separation of powers.

### C.   PAGA's constitutional defect cannot be cured through severability.

PAGA's fatal constitutional flaw—the complete lack of government oversight over private litigation prosecuted in the name of the public—lies at the heart of the legislation.  Accordingly, nothing short of declaring the entire statute unconstitutional can cure the defect.

Under certain circumstances, a court may properly save a statute from a constitutional challenge by merely severing the offending provision(s), if it can do so "without destroying the statutory scheme or utility of the remaining provisions. [Citations.]"  *Manning v. Municipal Court*, 132 Cal. App. 3d 825, 830 (1982). This is not possible with PAGA, which is defined by a system in which private attorneys stand completely in the place of the government.  PAGA's delegation of absolute authority to private lawyers enters "so entirely into the scope and design of the law that it would be impossible to maintain it without the invalid provisions."  *Id.*  Therefore, the doctrine of severability cannot cure PAGA's constitutional defect.

### III.   Plaintiff has not stated a claim for relief because she fails to plead facts to plausibly establish that Costco failed to "provide" a seat.

Wage Order 7-2001, § 14, states, "(A) All working employees shall be provided with suitable seats when the nature of the work reasonably permits the use of seats.  (B) When employees are not engaged in the active duties of their employment and the nature of the work requires standing, an adequate number of suitable seats shall be placed in reasonable proximity to the work area and employees shall be permitted to use such seats when it does not interfere with the

14

13593809v.2

1   performance of their duties."[2]  This section was "originally established to cover

2   situations where the work is usually performed in a sitting position with

3   machinery, tools or other equipment.  It was not intended to cover those positions

4   where the duties require employees to be on their feet, such as salespersons in the

5   mercantile industry."  RFJN, Ex. C, December 5, 1986 Letter from Albert J. Reyff,

6   Chief Deputy Labor Commissioner.

7          Plaintiff claims that she was not "provided" seats, notwithstanding that the

8   nature of her work allegedly reasonably permits the use of seats.[3]  Defendant is

9   unaware of any court to date considering what the term "provide" means in the

10  context of this Wage Order.  But the meaning of this term as used in another

11  section of the California Labor Code has been amply litigated.  Specifically, Cal.

12  Lab. Code § 512(a) and Wage Order 7-2001 impose an obligation on employers to

13  "provide" employees who work for a work period of more than five hours per day

14  a meal period of not less than 30 minutes.  The issue of what the term "provide"

15  means in this context is presently pending before the California Supreme Court.

16  *See Brinker Restaurant Corp. v. Superior Court*, 196 P.3d 216, 85 Cal. Rptr. 3d

17  688 (2008); *Brinkley (Fred) v. Public Storage*, 198 P.3d 1087, 87 Cal. Rptr. 3d 674

18  (2009).  On the one hand, employers contend that the term "provide" as used in the

19  Labor Code and Wage Order means that an employer's obligation is only to "make

20  available" meal periods to employees who want them.  On the other hand,

21  employees contend that employers have an affirmative obligation to ensure that

22  employees actually take their meal break.

23         In the absence of California Supreme Court precedent, this Court must apply

24  the rule it believes that court would adopt under the circumstances.  *See Wyler*

25  _____

26  [2] This Wage Order has been codified at 8 Cal. Code Regs., tit. 8 § 11070.

27  [3] Plaintiff does not appear to allege any violation of Section 14(b).

28

1     *Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 663 (9th Cir. 1998).

2     With no decision on the issue yet from the California Supreme Court, the current

3     prevailing view is that "provide" means only that employers must make meal

4     breaks available, and have no duty to ensure that employees actually take their

5     meal periods.  The vast majority of federal courts construing California law agree.[4]

6     The reasoning is simple: the plain meaning of the term "provide" is "to supply or

7     make available."  *Brown*, 249 F.R.D. at 585 (citing Merriam Webster's Collegiate

8     Dictionary 937 (10th ed. 2002)).  The word "provide" "does not suggest any

9     obligation to ensure that employees take advantage of what is made available to

10     them." *Id.*

11        Similarly here, this Court should apply the plain and logical meaning of the

12     word "provide" in this context.  That is, Costco's only obligation is to make seats

13     available to employees to the extent they want them or request them, not

14     necessarily ensure that every employee has a seat, regardless of whether they want

15     one or not.

16        With respect to the plain meaning of the term "provide," Plaintiff has failed

17     to plead facts sufficient to state a claim for relief.  She has alleged only that Costco

18     did not "provide" her a seat, but she has not alleged any facts to even suggest that

19     Costco did not make seats available to her, or to anyone else who wanted them.

20

---

21   [4] *See, e.g., Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 640 (N.D. Cal. 2010);
*Lopez v. G.A.T. Airline Ground Support, Inc.*, 2010 U.S. Dist. LEXIS 95636, at
22   *29 (S.D. Cal. 2010); *Brown v. Federal Express Corp.*, 249 F.R.D. 580, 584-86
(C.D. Cal. 2008); *Kimoto v. McDonald's Corps.*, No. CV 06-3032 PSG (FM0x),
23   2008 U.S. Dist. LEXIS 86203, at *1647 (C.D. Cal. 2008); *Gabriella v. Wells
Fargo Financial, Inc.*, No. C 06-4347 SI, 2008 U.S. Dist. LEXIS 63118, at *10
24   (N.D. Cal. 2008); *Perez v. Safety-Kleen Sys., Inc.*, 253 F.R.D. 508, 512-16 (N.D.
Cal. 2008); *Kohler v. Hyatt Corp.*, No. EDCV 07-782-VAP (CWx), 2008 U.S.
25   Dist. LEXIS 63392, at *17-20 (C.D. Cal. 2008); *Salazar v. Avis Budget Group.
Inc.*, 251 F.R.D. 529, 533 (S.D. Cal. 2008); *Kenny v. Supercuts, Inc.*, 252 F.R.D.
26   641, 644-46 (N.D. Cal. 2008); *White v. Starbucks Corp.*, 497 F. Supp. 2d 1080,
1087-89 (N.D. Cal. 2007); *Lanzarone v. Guardsmark Holdings, Inc.*, No. CV06-
27   1136 R (PLAx), 2006 U.S. Dist. LEXIS 95785, at *1849 (C.D. Cal. 2006).

28

13593809v.2

Specifically, Plaintiff has not alleged that she ever requested a seat, was ever denied a seat, or even that she wanted a seat.  Nor does she allege that she suffered any actual injury or harm from not having a seat.  In the absence of such critical facts, Plaintiff has failed to state facts sufficient to constitute a claim for relief, and the Court should dismiss her claims.

**IV.    The Court Should Dismiss or Strike the Class Action Allegations Because Plaintiff Has Not Pleaded—And Cannot Plead—Facts to Support The Class Allegations.**

Even if Plaintiff alleged that she did request a seat, was denied a seat, wanted a seat, or that she was harmed by not having a seat, she has failed to allege any facts sufficient to support her class-action allegations.  Nor can she allege such facts, as a matter of law.

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and *a formulaic recitation of the elements of a cause of action will not do*."  *Id.* at 555 (emphasis added) (rejecting bare assertions of a "conspiracy" and "unlawful agreement" as failing to satisfy Rule 8 pleading standard).  The Supreme Court further held in *Twombly* that a plaintiff's "bare averment that he wants relief and is entitled to it" does not satisfy Fed. R. Civ. P. 8(a)(2), which requires that a complaint contain a "short and plain statement of claim showing that the pleader is entitled to relief."  *Id.* at 556 n.3.  Rather, a complaint must allege "enough facts to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  *Id.*

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009), the Supreme Court held that *Twombly* applies to "all civil actions," and explained the principles announced in *Twombly*:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. ***Threadbare recitals of the elements of a cause of action, supported***

17

*by mere conclusory statements, do not suffice* ... Rule 8 marks a notable and generous department from the hyper-technical, code-leading of a prior era, *but it does not unlock the doors of discovery or a plaintiff armed with nothing more than conclusions*. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a *plausible claim for relief will* . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not shown—that the pleader is entitled to relief.

*Id.*, at 1949-50 (emphasis added and internal citations omitted).

Thus, following *Iqbal* and *Twombly*, a two-pronged analysis must be used to determine the sufficiency of the factual allegations of a complaint:  (1) the Court first identifies and disregards conclusory allegations which are not entitled to a presumption of truth; and (2) the Court then determines whether the remaining allegations, if taken as true, present a plausible claim for relief.  *Id*. at 1950.

Since *Twombly* and *Iqbal* were decided, courts have recognized that class actions must comply with the same minimum pleading requirements under Rule 8(a) in order to proceed to class discovery.  *See, e.g., Nicholas v. CMRE Financial Services, Inc.*, 2009 WL 1652275, at *4 (D.N.J. June 11, 2009); *Hodczak v. Latrobe Specialty Steel Co.*, 2009 WL 911311, at *9 (W.D. Pa. Mar. 31, 2009). This analysis of the sufficiency of the pleadings does not mean that a court is engaged in a premature class certification analysis.  Rather, this standard recognizes that *all* allegations, including those related to class treatment, must contain sufficient allegations for the Court to determine that Plaintiffs are entitled to move forward and subject Defendant to the rigors, burdens, and costs of the discovery that necessarily transpires in a putative class-action lawsuit, particularly one that will implicate over 7,000 current and former Costco employees.

Complaints containing Rule 23 class allegations that are phrased merely as legal conclusions based on the language of the class-action pleading requirements do not pass muster under *Twombly* and *Iqbal*, the same way that a single-plaintiff

18

13593809v.2

1    complaint would fail for merely stating legal conclusions.  *See Nicholas*, 2009 WL

2    1652275 at *4 (granting a motion for more definite statement where plaintiffs

3    made formulaic allegations of the Rule 23 requirements).  In other words, in

4    pleading a class action, Plaintiff must come forward with allegations of sufficient

5    *facts* that might plausibly support the existence of the necessary elements of a class

6    action.  Here, Plaintiff has failed to do so, and the very nature of the claims she has

7    asserted precludes her from doing so as a matter of law.

8    **A.    Plaintiff has failed to plead facts to plausibly support that an ascertainable class exists—and cannot do so as a matter of law.**

9    "The identity of class members must be ascertainable by reference to

10   objective criteria."  5 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE § 23.21[1]

11   (2001).  Thus, a class definition must be "definite enough so that it is

12   administratively feasible for the court to ascertain whether an individual is a

13   member."  *O'Connor v. Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal.

14   1998).  "A class definition is inadequate if a court must make a determination of

15   the merits of the individual claims to determine whether a person is a member of

16   the class."  *Hanni v. Am. Airlines, Inc.*, 2010 U.S. Dist. LEXIS 3410, at *24 (N.D.

17   Cal. Jan. 15, 2010) (quoting 5 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE §

18   23.21[3][c] (2001)).  Class definitions that incorporate legal standards of liability

19   are inherently unascertainable, as they necessarily require merits determinations.

20   *See, e.g., Eversole v. EMC Mortg. Corp.*, 2007 U.S. Dist. LEXIS 38892, at *15-16

21   (E.D. Ky. May 29, 2007) (the issue of liability in the case was the same "exact

22   question that must be decided before the class can be ascertained"); *Bostick v. St.*

23   *Jude Med., Inc.*, 2004 U.S. Dist. LEXIS 29997, at *48-49 (W.D. Term. Aug. 17,

24   2004) ("The requirement of ascertainability 'is not satisfied when the class is

25   defined simply as consisting of all persons who may have been injured by some

26   generically described wrongful conduct allegedly engaged in by a defendant'

27

28

13593809v.2

1  because to establish who belongs in the class, the court would have to "conduct

2  'mini-trials on the merits'.") (citation omitted).

3      Plaintiff here purports to represent a putative class of California-based

4  Costco employees employed as "cashiers" and in "related positions that regularly

5  involve the operation of a cash register," who at any time during the applicable

6  period were not provided with seats during working time.  This putative class

7  definition consists of all persons who may have been injured by some generally

8  described wrongful conduct.  To know who belongs to this class, one would need

9  mini-trials to see who worked in a cashier or "related position" and whether (a)

10  they had a seat, (b) they wanted a seat, (c) they requested a seat, (d) the nature of

11  the work reasonably permitted use of a seat, and (e) any injury resulted.  In short,

12  the main issue, as to each class member, would be whether Costco "provided" a

13  seat—the same exact question determining who belongs in the putative class.

14      Plaintiff's proposed class definition fails to account for these difficulties.

15  She has not alleged that the class is "ascertainable," nor has she alleged how the

16  class can be determined by objective criteria, without merits determinations.

17      Plaintiff has failed to plead facts sufficient to plausibly establish that an

18  ascertainable class exists in this case.  Moreover, it is readily apparent that the very

19  nature of the claims asserted precludes her from doing so.  Accordingly, the Court

20  should dismiss or strike the class action allegations, with prejudice.

21      **B.**    **Plaintiff has failed to plead facts to plausibly show her claims**
                **are typical of putative class members'—and cannot do so.**

22

23      To show typicality, a plaintiff must show she possesses timely claims that

24  typify those asserted for absent class members.  Accordingly, a plaintiff's inability

25  to establish a basis for her own claims akin to those she asserts for others precludes

26  certification.  *See E. Texas Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403-04,

27  97 S. Ct. 1891, 52 L. Ed. 2d 453 & n.9 (1977); *Robinson v. Sheriff of Cook County*,

28  167 F.3d 1155, 1157 (7th Cir. 1999).

13593809v.2

Here, Plaintiff has failed to plead facts to plausibly establish she has claims for relief, much less that her claims typify those of putative class members. The extent of her "typicality" showing is the two places in the Complaint where she just states that Costco failed to provide putative class members with seats. Complaint ¶¶ 5, 13. But she has failed to plead any *facts* that even suggest that her experience as a Cashier Assistant in the single Costco warehouse she worked at was similar to that of any other cashier and cashier assistant at any other Costco warehouse, or that any other cashiers and cashier assistants suffered similar injuries to those alleged by Plaintiff.

First, while Plaintiff alleges that she and the putative class members were all "injured" by Costco's "actions," Complaint ¶ 11(f), she has failed to plead what the injury is. Indeed, she has not alleged that she asked for a seat, was denied a seat, or how she was in any way harmed by not having a seat. As she herself has not pleaded any injury, she necessarily cannot represent absent class members.

Second, even if Plaintiff could allege some injury, she has not alleged *facts* to support her claim that she has suffered a "similar injury" to others. Nor could she do so. Even assuming that an employee could suffer an "injury" as a result of not being "provided" a seat, whether someone actually suffered an injury will be inherently fact specific. For example, Plaintiffs' claims would not be typical of a cashier or cashier assistant who preferred standing or otherwise did not want a seat.

The idea that the named Plaintiff—who worked only in one Costco location— is "similarly situated" and has claims and injuries "typical" of *each and every other* cashier and "related position" throughout California is unsupported by any factual allegations. Given the complete absence of factual allegations, this is the very type of "fishing expedition" that the Supreme Court decried in *Twombly* and *Iqbal*. Thus, this Court should dismiss or strike the class allegations.

NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO. LACV11-6563-ODW (JEMx)

13593809v.2

**V.    The Court Should Dismiss The Claims Regarding Overtime, Meal and Rest Breaks, and Labor Code §203 Because Plaintiff Has Not Pleaded Facts To Support Those Claims.**

The vague allegations that "Defendants are legally responsible for the payment of overtime compensation, rest and meal period compensation and/or Labor Code § 203 penalties … by virtue of their unlawful practices,"[5] must be dismissed as a matter of law.  Plaintiff has failed to allege sufficient facts under these legal theories entitling her to relief.  In fact, she has not alleged *any* facts at all.  Her recitation of a legal conclusion is insufficient to state a claim for relief.

**VI.   The Court Should Dismiss Plaintiff's Claims, with Prejudice, Because Any Award of Penalties Would Be Unjust, Arbitrary, Oppressive, And Confiscatory as a Matter of Law.**

**A.    The penalty provisions in Section 2699 must be applied narrowly.**

Penalties are disfavored, and statutes imposing civil penalties must be narrowly construed by the Court.  In *Hale v. Morgan*, 22 Cal. 3d 388 (1978), the California Supreme Court reversed imposition of a statutory penalty of more than $17,000 ($100 per day) in connection with a dispute involving property with annual rent of $780, because the statute imposing the penalty did not permit the trier of fact to exercise discretion in fixing the amount of the penalty, thereby ignoring the degree of the defendant's culpability and other possibly mitigating factors.  The Supreme Court held that imposition of such a large civil penalty was confiscatory in that the penalty was "wholly disproportionate to any discernible and legitimate legislative goal, and is so clearly unfair that it cannot be sustained." *Id.* at 405.  Importantly, the Supreme Court noted that the court has "looked with disfavor on ever-mounting penalties and have narrowly construed the statutes which either require or permit them." *Id.* at 405.  *See also Waterman Convalescent*

---

[5] Complaint ¶¶ 4, 6.

NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO. LACV11-6563-ODW (JEMx)

13593809v.2

1   *Hospital, Inc. v. Jurupa Community Services Dist.*, 53 Cal. App. 4th 1550, 1556

2   (1997) ("Penalties and forfeitures are not favored by the courts, and statutes

3   imposing penalties or creating forfeitures must be strictly construed."); *Schuhart v.*

4   *Pinguelo*, 230 Cal. App. 3d 1599, 1610 (1991) (same).  Thus, "every intendment

5   and presumption is against the person seeking to enforce the penalty or forfeiture."

6   *No Oil, Inc. v. Occidental Petroleum Corp.*, 50 Cal. App. 3d 8, 29 (1975).

### B.   The Court Has Discretion To Impose Penalties Less Than The Amounts Specified In The Statute Or No Penalties At All.

PAGA penalties are not mandatory.  PAGA vests courts with discretion to award a lesser amount than the maximum civil penalty if "based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory."  Cal. Lab. Code § 2699(e)(2). Here, the circumstances of this case dictate that *any* award would be unjust, arbitrary, oppressive, and confiscatory.

First, the Wage Order section at issue here was never intended to govern jobs such as Plaintiff's.  Rather, it was "originally established to cover situations where the work is usually performed in a sitting position with machinery, tools or other equipment.  It was not intended to cover those positions where the duties require employees to be on their feet, such as salespersons in the mercantile industry."  RFJN, Ex. C.  Second, as discussed above, Plaintiff has not alleged that she (or any other putative class member) ever requested a seat while working, ever had a request denied, or that she even wanted to sit while working.  Furthermore, she has not alleged that she (or any other putative class member) actually suffered any injury as a result of not being "provided" a seat.

Plaintiff nonetheless seeks civil penalties against Defendant in an amount that could exceed **$35 million**.  She also seeks an award of attorneys' fees, which even assuming a conservative amount of 20% of the total recovery, would be **$7**

NOTICE OF MOTION AND MOTION TO DISMISS
CASE NO. LACV11-6563-ODW (JEMx)

13593809v.2

**million**.  And this does not even take into consideration the resources that Defendant would be forced to expend in defending this action.

Accordingly, even accepting the allegations of Plaintiff's Complaint as true, it would be unjust, arbitrary, oppressive, and confiscatory to impose penalties in this case for an alleged failure to provide this former cashier assistant a seat while she was working.  The Court should decide as a matter of law that no penalties could be imposed, and this matter should be dismissed with prejudice.

## CONCLUSION

For the reasons stated herein, the Court should dismiss the Complaint, with prejudice.  In the alternative, the Court should dismiss or strike the class allegations, with prejudice.

DATED: August 17, 2011              SEYFARTH SHAW LLP


                                    By:_____/s/ David D. Kadue_____
                                            David D. Kadue
                                            Nicole A. Keshishian

                                    Attorneys for Defendant
                                    COSTCO WHOLESALE CORPORATION

24

13593809v.2